FILED

2012 JAN 26  A 10:31

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Paid
SI
99

ADR

E-FILING

1   Brian P. Hennessy, Bar No. 226721
    BHennessy@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA  94304-1212
    Telephone: 650.838.4300
4   Facsimile: 650.838.4350

5   James McCullagh (Pro Hac Vice to Follow)
    JMcCullagh@perkinscoie.com
6   Joseph P. Cutler (Pro Hac Vice to Follow)
    JCutler@perkinscoie.com
7   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
8   Seattle, WA  98101-3099
    Telephone: 206.359.8000
9   Facsimile: 206.359.9000

10  Attorneys for Plaintiff FACEBOOK, INC.

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15

16  FACEBOOK, INC., a Delaware        Case No. CV12-00414 PSG
    corporation,
17                                    COMPLAINT FOR:
                    Plaintiff,
18                                    1)  VIOLATION OF THE CAN-SPAM ACT;
          v.                          2)  BREACH OF CONTRACT;
19                                    3)  VIOLATION OF THE LANHAM ACT:
    ADSCEND MEDIA, LLC, a Delaware        TRADEMARK DILUTION; and
20  corporation; and FEHZAN ALI and   4)  VIOLATION OF THE LANHAM ACT:
    JEREMY BASH, Individuals,             FALSE DESIGNATION OF ORIGIN.
21
                    Defendants.
22

23  I.    INTRODUCTION

24        1.    Adscend Media, LLC, Fehzan Ali and Jeremy Bash (collectively, "Defendants")

25  paid their affiliates to use Facebook-branded Pages to deceive and defraud Facebook users and

26  initiate the sending of unsolicited commercial messages ("spam") across Facebook's platform.  As

27  a result of these actions, Facebook here seeks damages and injunctive relief against Defendants

28

LEGAL22138385.9                         -1-

1    for violations of the CAN-SPAM Act and the Lanham Act, and for breach of contract with

2    Facebook.

### II.    PARTIES

5    2.     Plaintiff Facebook is a Delaware corporation with its principal place of business in

6    Menlo Park, California.

7    3.     On information and belief, Defendant Jeremy Bash is an individual and co-owner

8    of Adscend Media, LLC, living in Huntington, West Virginia.

9    4.     On information and belief, Defendant Fehzan Ali is an individual and co-owner of

10   Adscend Media, LLC, living in Austin, Texas.

11   5.     On information and belief, Defendant Adscend Media, LLC is a Delaware

12   company with its principal place of business in Wilmington, West Virginia.

### III.    JURISDICTION AND VENUE

15   6.     This Court has federal question jurisdiction over this action under 28 U.S.C.

16   § 1331 because the action alleges violations of the CAN-SPAM Act (15 U.S.C. §§ 7701 *et seq.*)

17   and the Lanham Act (15 U.S.C. § 1125(a), (c)).  This Court has supplemental jurisdiction over the

18   remaining claims under 28 U.S.C. § 1367.

19   7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial

20   part of the events giving rise to the claims raised in this lawsuit occurred in this district and

21   because Defendants agreed to comply with Facebook's Statement of Rights and Responsibilities

22   ("Statement"), which provides that any dispute arising out of or related to the Statement will be

23   resolved by a state or federal court located in Santa Clara County.

24   8.     This Court has personal jurisdiction over Defendants because during all relevant

25   times, Defendants repeatedly, knowingly and intentionally accessed and induced their affiliates to

26   access Facebook servers located in California in furtherance of their deceptive and fraudulent

27   marketing schemes.  In the course of their conduct, Defendants had systematic and continuous

1  contacts with California and targeted their wrongful acts at Facebook, which they knew was

2  headquartered in California.

3      9.      This Court also has personal jurisdiction over Defendants because they agreed to

4  comply with Facebook's Statement and thereby agreed to submit to the personal jurisdiction of

5  the courts located in Santa Clara County, California for the purpose of litigating these claims.

## IV.      FACTS AND BACKGROUND

**A.      Facebook Background and Service**

9      10.     Founded in February 2004, Facebook is a social network that helps people

10  communicate more efficiently and effectively with their friends, family and coworkers. The

11  company develops technologies that facilitate the sharing of information through the social

12  graph—the digital mapping of people's real-world social connections. As of the filing of this

13  Complaint, more than 800 million active Facebook users interact with over 900 million objects

14  (Pages, groups, events, etc.) on Facebook. At least half of Facebook's active users log on to

15  Facebook on any given day.

16      11.     To access all of the features of Facebook's services, including the ability to create

17  a user profile and send or post messages to other Facebook users, a person must sign up, establish

18  a unique username and password, and agree to the terms and conditions contained in Facebook's

19  Statement.

20      12.     Once a user obtains a Facebook account, the user is granted access to his or her

21  personal "profile," which may be populated with information about the user. Facebook users may

22  connect to the profiles of other users as Facebook "Friends."

23      13.     Facebook's Statement prohibits the use of personal profiles for commercial gain,

24  but allows Facebook users to create "Pages," which are similar to profiles but are generally used

25  to promote businesses, charities, or specific causes.

26      14.     Facebook users connect their profiles to a Facebook Page by clicking on the

27  "Like" button that is located on the top of the Page.

28

15.     Facebook enables Pages to communicate with the users who have "liked" them. Secure communication among Facebook users is vital to the integrity of Facebook's network and the confidence that Facebook users have in using Facebook.

16.     Each user profile has a "Wall," which is an area where registered users with access to the profile or Page may post content. Facebook Pages also have "Walls." Only registered users may post messages on the Walls of other Facebook user profiles or Facebook Pages. Recently, Facebook introduced "Timeline," which converts a profile to a "Timeline," and organizes all posts and content in the chronological order that they were posted. Once a profile is converted to "Timeline," there is no separate "Wall"; all content is simply posted to the Timeline. As of the filing of this Complaint, not all profiles have converted to Timeline, and Facebook Pages continue to have traditional "Walls" for posting content.

17.     Each and every Facebook webpage, including each profile and Page, prominently displays the "Facebook" trademark, referenced in paragraph 24, in the upper left hand corner of the webpage.

18.     Facebook provides each Facebook user with a "News Feed." The News Feed displays, among other things, activities performed by the user's Friends and the Facebook Pages to which the user has connected. The "Facebook" trademark referenced in paragraph 24 is prominently displayed in the upper left hand corner of all News Feed pages.

19.     When a Facebook user "Likes" a Facebook Page, a message announcing that the user "Liked" the Page may be displayed in each of that user's Friends' News Feeds. The message may also contain a link to the Facebook Page that the user's Friends can click to visit the Page (and decide whether to "Like" the page themselves).

20.     A user can also "share" Pages with his or her Friends directly by posting a link to the particular Page on the friend's Wall or Timeline, on his or her own Wall or Timeline, on another Page that he or she owns, or by sending a Facebook message containing the link to a friend. A notice that a user shared a Page by posting it on his or her Wall or Timeline, or on a Friend's Wall or Timeline, usually appears in the News Feeds of each of the user's Friends (unless the user specifically limits the audience that can view the posting).

1    21.    Facebook devotes significant resources to combat the unauthorized use of its

2    website and services.  In addition to a team of Facebook employees work to improve Facebook's

3    security, Facebook also provides users with tools that help them ensure that their accounts are not

4    used by others and the ability to adjust their sharing settings.

5

6    **B.    Facebook's Trademarks Are Famous**

7    22.    Facebook is the owner of the entire right, title, and interest in and to a number of

8    trademarks and service marks, including the following, for which Facebook owns federal

9    registrations covering a wide variety of goods and services:

10    23.    **FACEBOOK** Registration: Reg. No. 3801147 (first use for Classes 38, 41, and

11    42, Feb. 28, 2004; first use for Class 9, Aug. 31, 2006);

12

13    24.     Registration: Reg. No. 3935447 (first use for Class 9, Aug.

14    31, 2006); and

15

16    25.     Registration: Reg. No. 3948096 (first use for Classes 9, 35, 38, 41, 42,

17    and 45, Oct. 31, 2006).

18    26.    Attached to this Complaint as Exhibit A, and incorporated herein by reference, are

19    true and correct copies of the United States Patent and Trademark Office printouts of the online

20    Registration Certificates for these Trademarks.  The registrations noted in Exhibit A are valid,

21    subsisting, unrevoked and uncancelled.  These registered trademarks are referred to collectively

22    as "the Facebook Trademarks."

23    27.    Facebook has continuously used the Facebook Trademarks in interstate commerce

24    since the dates in paragraphs 23-25, in connection with its goods and services.

25    28.    As a result of Facebook's widespread use of the Facebook Trademarks worldwide,

26    its prolific presence on third party websites, the continuous and unsolicited media coverage of

27    Facebook, the high degree of consumer recognition of the Facebook Trademarks and the strong

28

1   and loyal base of users and advertising customers that regularly use and enjoy Facebook's

2   services, the Facebook Trademarks are famous and distinctive within the meaning of Section

3   43(c) of the United States Trademark Act, 15 U.S.C. § 1125(c).

4   **C.      The Defendants Agreed to the Terms Governing Their Use of Facebook's Site and**

5   **Services**

6   29.     All Facebook users, including Defendants, agree to comply with the Statement

7   when they create a Facebook account or access the Facebook website.  A true and correct copy of

8   Facebook's current Statement is incorporated here by reference as if stated in its entirety and

9   attached as Exhibit B.

10  30.     Facebook's Statement, among other things, prohibits users from (a) using

11  Facebook to do anything unlawful, misleading, or malicious; (b) using Facebook's trademarks

12  without Facebook's written permission; (c) sending or posting unauthorized commercial

13  communications (such as spam) on Facebook; (d) collecting users' content or information, or

14  otherwise accessing Facebook using automated means without Facebook's permission; (e) using

15  Facebook in any unlawful manner, or in any manner that could damage, disable, overburden, or

16  impair the Facebook website; (f) facilitating and encouraging violations of the Statement by

17  others; and (g) uploading malicious code.

18  31.     The Statement also addresses the permissible uses of Facebook Pages by

19  referencing and incorporating Facebook's Pages Terms, which include the following restrictions

20  on permitted use of Pages: (a) only an authorized representative of the subject of the Page may

21  administer the Page; and (b) if the Page contains any form of advertising, then Section 11 of the

22  Statement and Facebook's Advertising Guidelines apply to the Page and its administrator.

23  Facebook's current Pages Terms are incorporated here by reference as if stated in their entirety

24  and are attached as Exhibit C.

25  32.     Facebook's Advertising Guidelines, incorporated by both the Pages Terms and the

26  Statement, define the scope of permitted advertising activity on Facebook, including

27  advertisements on Facebook Pages.  These Guidelines state, among other things, that:

28

a) Ads must clearly represent the company, product, service, or brand that is being advertised and must not contain false, misleading, fraudulent, or deceptive claims or suggest false relevancy to generic offers.

b) Products and services promoted in the ad copy must be clearly represented on the landing page, and the destination site may not offer or link to any prohibited product or service.

c) Ads must lead to a functioning landing page that does not interfere with a user's ability to navigate away from the page.

33.     Facebook's Advertising Guidelines are incorporated here by reference as if stated in their entirety and attached as Exhibit D.

34.     Defendants are registered Facebook users and during all relevant times have been and are bound by their agreement to abide by Facebook's Statement, Pages Terms, and Advertising Guidelines.  At no time have the Defendants received permission from Facebook to conduct any commercial activity on Facebook's website that exceeds the authorization provided in the Statement, Pages Terms or Advertising Guidelines.

**D.     Defendants' Unauthorized and Fraudulent Activities**

35.     Defendants operate an advertising network that recruits and pays affiliates who deploy advertising campaigns that rely on sending unsolicited communications to Facebook users in order to make their campaigns spread virally across the Facebook network.

36.     Defendants encourage and are aware that their affiliates trick Facebook users into sending deceptive commercial messages to their Facebook Friends.  Defendants procure the sending of messages that purport to contain or direct users to non-commercial content such as video clips or salacious news stories, but these messages in actuality are disguised commercial messages that will direct users to websites that solicit information from the users in exchange for

1  payment to Defendants.  Importantly, the advertising websites to which users are unwittingly

2  directed are totally unrelated to the subject or contents of the original messages that were sent to

3  Facebook users.  While the subjects and contents of these posts vary from campaign to campaign,

4  all of the messages deceive Facebook users in two ways: (1) they do not identify the Defendants

5  or their affiliates as the initiators and senders of the messages, and (2) they deceptively hide the

6  fact that the posts are designed to lure Facebook users into participating in deceptive advertising

7  scams unrelated to the subject of the message.

8         37.    Facebook is informed and believes and hereby alleges that Defendants create and

9  provide their affiliates with technology that is designed to deceive Facebook users into visiting

10  websites that pay the Defendants for the referral traffic.  This technology, called a "content

11  locking widget," is a software script that places a box over and in front of the content on a

12  website.  Unless and until the visitor to the website completes certain actions within the widget,

13  the box will remain and cover the content of the website—thereby "locking" the desired content

14  from the visitor's view.

15         38.    Defendants encourage and pay their affiliates to create Facebook Pages that are

16  titled and designed to "bait" users into visiting other websites.  These bait pages offer visitors an

17  opportunity to view enticing or salacious content, such as "[Video] See What Happens to his Ex

18  Girlfriend!" that displays what appears to be an embedded online video with a picture of a

19  scantily clad woman hidden behind the content locking widget, or "Cannot BELIEVE a 2 year old

20  is doing THIS," with text that states, "You will be SHOCKED when you see the video.  Simply

21  "Like" this page to see the video."

22         39.    The content locking widgets require Facebook users to "Like" the Page before

23  being able to see the contents of the Page.  When a user does "Like" the Page, a message is

24  created and posted on the users' Walls or Timelines (and into the News Feeds of their Friends)

25  advertising the title of the bait page.  When Friends see these messages, they believe that the

26  Facebook user actually viewed the locked content, which increases the likelihood that the user's

27  Friends will click on the link.

28

40.     In some cases after Facebook users have "Liked" the bait pages, the bait page appears to queue the restricted content for viewing, but the content locking widget reappears, this time presenting Facebook's "Share" box with instructions that in order to view the content, the user must "Share" the bait page with his or her Friends.  When Facebook users follow these instructions, they send communications promoting the bait pages to their Facebook Friends.  Again, when the Friends see these messages, they believe that the Facebook user actually viewed the locked content, which increases the likelihood that the user's Friends will clink on the link.

41.     After completing the required "sharing," the bait page again appears to present the promised content, but the content locking widget appears yet again and this time presents a message disguised within a box that falsely appears to come from Facebook, entitled "Age Verification" or "Security Check."  In the case of the "Age Verification" pop up, the message within the box asks the user, "Are you over 13 years of age?  Click "yes" twice to play," whereupon Defendants' widget loads links to "Free" gift card offers, "IQ" surveys, or magazine subscriptions, all of which ultimately solicit additional information.  In the case of the "Security Check" pop up, the message within the box tells the user that "Security tests are to ensure the people on the site are real.  Complete a free survey below to verify you are human," or "The content on this page has been protected.  Please complete a survey below to view this content."  Like the surveys in the "Age Verification" examples, these surveys ultimately solicit text or magazine subscription offers in exchange for revealing the locked content.

42.     Facebook is informed and believes and hereby alleges that in many cases, the content locking widgets are covering "content" that does not actually exist.  The content locking widgets are simply a ruse to lure Facebook users into following the instructions presented within them and ultimately obtain information from those users.

43.     Facebook is informed and believes and hereby alleges that Defendants knowingly pay some of their affiliates to embed software scripts within their bait pages that surreptitiously "Like" the bait pages on behalf of the Facebook users without the users' knowledge whenever they click on a link (not labeled as a "Like" button) on the bait page.  This scheme uses computer code to communicate to Facebook that Facebook's "Like" button has been activated, when in fact

1    the user not seen the Facebook "Like" button, but has clicked on another link, with the script then

2    carrying out the "liking" function.  Hijacking a Facebook user's click and "Liking" Facebook

3    Pages on the user's behalf without his or her knowledge is known within the affiliate marketing

4    community as "Clickjacking" or "Likejacking."

5          44.    Facebook is informed and believes and hereby alleges that Defendants know that

6    clickjacking is deceptive and violates Facebook's Statement, Pages Terms and Advertising

7    Guidelines.

8          45.    Facebook is informed and believes and hereby alleges that Defendants

9    intentionally design the look and feel of their content locking widgets to look like they are

10   generated by Facebook so that Facebook users will be more likely to click links and participate in

11   the offers presented by Defendants' affiliates, thereby increasing Defendants' commission

12   payments from the advertisers whose websites, products and services are ultimately promoted by

13   these elaborate schemes.

14         46.    Facebook is informed and believes and hereby alleges that Defendants regularly

15   review their affiliates' campaigns and are fully aware that they copy the look and feel of Facebook

16   Pages and utilize Facebook trade dress in order to deceive Facebook users.

17         47.    Facebook is informed and believes and hereby alleges the vast majority of

18   Defendants' revenue comes from traffic that originates on Facebook and that for a period of time

19   approximately 80% of Defendants' gross monthly revenue of approximately US$1.2 million was

20   derived from schemes like those detailed herein.

21         48.    Facebook is informed and believes and hereby alleges that Defendants' affiliates

22   tricked at least 280,214 Facebook users into interacting with their bait pages through spam

23   solicitations.

24         49.    Facebook is informed and believes and hereby alleges that Defendants are aware

25   of their own increased risk of liability when their affiliates use Facebook's trademarks and dress,

26   and that Defendants knew that their affiliates were using spam to distribute links to Facebook

27   users on Facebook, but consciously decided to support and pay for the promotion of their

28   campaigns because they are highly profitable.

50.     Facebook is informed and believes and hereby alleges that Defendants also know that in many cases, the content that is originally promised in the links sent to Facebook users, and on the corresponding bait pages, is never displayed to Facebook users, even after they complete the surveys and visit the websites that pay Defendants for the referral traffic.

51.     Facebook is informed and believes and hereby alleges that Defendants know that the surveys are fake. For example, the "IQ Quiz" campaigns that Defendants promote through their affiliates instruct Facebook users to answer ten questions in return for a promise that the campaign will email the user his or her "IQ" score once the user subscribes to a service or provides personal information. In fact, the "IQ" campaign randomly generates an arbitrary score that is not tied in any way to the person's real IQ or the results of the test that the user takes. Nevertheless, Defendants are paid between $5.00 and $10.00 per month for each user who subscribes to a service or provides personal information in connection to the "IQ Quiz."

52.     Facebook is informed and believes and hereby alleges that Defendants knowingly pay their affiliates to deploy these advertising campaigns that capitalize on the trust that Facebook users have in the Facebook environment in order to trick them into visiting external websites that pay Defendants for the referral traffic.

E.     **Harm to Facebook**

53.     Defendants' misleading and deceptive advertising scheme has tainted the Facebook experience for affected Facebook users, and Facebook has suffered and continues to suffer significant harm to its reputation and goodwill due to Defendants' actions.

54.     Facebook has suffered economic damages in numerous ways, including damages attributable to the efforts and resources it has used to combat Defendants' affiliates' spam; to combat Defendants' and Defendants' affiliates' unauthorized access to Facebook accounts and servers; to respond to user complaints; to provide assistance in preventing Defendants and their affiliates from the continued unauthorized use of Facebook's services; and to identify and locate Defendants and their affiliates.

1    55.    Facebook is informed and believes and hereby alleges that Defendants have and
2    continue to induce their affiliates to engage in, willfully and maliciously, the initiation and
3    sending of unsolicited commercial messages and have done so to defraud users and profit from
4    illegal spamming and advertising campaigns.

5    56.    Defendants have been unjustly enriched by their activities at the expense of
6    Facebook and its users.

## V.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**VIOLATION OF CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ACT OF 2003 ("CAN-SPAM"), 15 U.S.C § 7701, *et seq.***

11    57.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth
12    herein, the allegations in paragraphs 1 through 56.

13    58.    Facebook is an Internet access service because it enables users to access content,
14    information, electronic communications, and other services over the Internet, including access to
15    proprietary content, information and other services as part of a package to its users.

16    59.    Facebook's website and computers operate in interstate and foreign commerce and
17    communication and are therefore protected computers.

18    60.    The communications that Defendants and their affiliates initiated and sent to other
19    Facebook users are electronic mail messages.

20    61.    The electronic mail messages initiated by Defendants and their affiliates are
21    "commercial" electronic mail messages because the primary purpose is commercial advertisement
22    or promotion of a commercial product or service.

23    62.    Defendants induce their affiliates to initiate commercial electronic mail messages
24    on Facebook and thereby procure the origination or transmission of such messages.

25    63.    Defendants intentionally violate CAN-SPAM by procuring, initiating and/or
26    sending messages that contain header information that is materially false or misleading as to the
27    true identity of the initiator of the message; procuring, initiating and/or sending messages with
28    subject headings that are misleading regarding the contents, purpose, subject matter, and

1  Facebook's connection to the messages; and procuring, initiating and/or sending messages that

2  deceptively hide their true nature as advertisements for undisclosed goods or services.

3      64.    Facebook is informed and believes and hereby alleges that Defendants have

4  knowledge of and control over their affiliates' actions and conspire with their affiliates to violate

5  CAN-SPAM.

6      65.    Defendants cause Facebook harm by causing higher-bandwidth utilization related

7  to the spam, by causing Facebook to expend resources to combat and respond to the spam, by

8  deterring users and potential users from using Facebook, by damaging Facebook's goodwill and

9  reputation with its customers, and by causing other injuries to Facebook.

10

11  **SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

12

13      66.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth

14  herein, the allegations in paragraphs 1 through 65.

15      67.    The use of Facebook's site and services, the creation of Facebook Pages on the

16  Facebook network and the placement of advertisements on Facebook Pages are governed by and

17  subject to Facebook's Statement, Pages Terms and Advertising Guidelines.

18      68.    Defendants accepted and agreed to Facebook's Statement, Pages Terms and

19  Advertising Guidelines, which are binding on Defendants.

20      69.    Facebook has performed all conditions, covenants and promises required of it in

21  accordance with its Statement, Advertising Guidelines and Pages Terms.

22      70.    Defendants, through their actions as described above, knowingly, willfully,

23  repeatedly and systematically breached and continue to breach Facebook's Statement, Pages

24  Terms and Advertising Guidelines through their conduct as alleged in this Complaint.

25      71.    Facebook is informed and believes and hereby alleges that Defendants induce their

26  affiliates to breach Facebook's Statement, Advertising Guidelines and Pages Terms in direct

27  violation of their own obligations under the Statement to, among other things, not initiate spam,

28

1  not use automated scripts, not confuse or mislead Facebook users, and not send advertising to

2  Facebook users that does not properly describe the products and services ultimately offered.

3      72.    Defendants' breaches of Facebook's Statement, Pages Terms and Advertising

4  Guidelines directly and proximately caused and continue to cause Facebook irreparable and

5  incalculable harm and injury.

6

7  **THIRD CAUSE OF ACTION**

8  **VIOLATION OF THE LANHAM ACT: FEDERAL TRADEMARK DILUTION, 15 U.S.C**<br>**§ 1125(c)**

9

10      73.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth
herein, the allegations in paragraphs 1 through 72.

11

12      74.    The Facebook Trademarks have a high degree of consumer recognition, are widely

13  recognized by the general consuming public of the United States as a designation of Facebook's

14  goods and services and are famous, and were famous before Defendants began their infringing
activities.

15

16      75.    Defendants are liable for contributory infringement because they intentionally

17  induce and pay their affiliates to use and display the Facebook Trademarks in the course of their
unauthorized activities to further their schemes.

18

19      76.    Facebook users associate the negative experience of the deceptive Facebook bait

20  pages used by these campaigns with the goods and services normally offered by Facebook under
the Facebook Trademarks, which causes dilution of those same marks by tarnishment.

21

22      77.    Defendants willfully intend to and traded on the recognition of the Facebook

23  Trademarks, which entitles Facebook to the additional remedies under 15 U.S.C. § 1125(c)(5).

24      78.    Defendants' wrongful use of the Facebook Trademarks is and was deliberate,

25  willful, fraudulent, and without any extenuating circumstances; constitutes a willful intent to trade

26  on Facebook's reputation or cause dilution of the famous Facebook Trademarks. This is an

27  exceptional case within the meaning of Lanham Act § 35, 15 U.S.C. § 1117, entitling Facebook to
treble damages, attorneys' fees and costs and prejudgment interest.

28

79.    The distinctive nature of the Facebook Trademarks is valuable, and Facebook is suffering and will continue to suffer irreparable harm if Defendants' wrongful conduct is allowed to continue.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE LANHAM ACT: FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a)

80.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 79.

81.    As part of their scheme, Defendants pay their affiliates to use the Facebook Trademarks in commerce without Facebook's authorization or consent and with knowledge that the use violates Facebook's terms of use.

82.    Defendants' and their affiliates' unauthorized use of the Facebook Trademarks is likely to cause confusion, mistake or deception among the consuming public regarding the affiliation, connection or association of Defendants, their affiliates and their customers with Facebook because Facebook users mistakenly believe that Facebook has endorsed or permitted the activity.

83.    Defendants pay their affiliates to use the Facebook Trademarks in connection with false or misleading descriptions of fact, and false or misleading representations of fact that are likely to cause confusion and mistake among Facebook users who fall prey to the deceptive scheme.

84.    Defendants' conduct has caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

85.    Defendants' wrongful use of the Facebook Trademarks is and was deliberate, willful, fraudulent and without any extenuating circumstances and constitutes a willful intent to trade on Facebook's reputation or to cause dilution of the famous Facebook Trademarks.  It is an

1  exceptional case within the meaning of Lanham Act § 35, 15 U.S.C. § 1117, entitling Facebook

2  to treble damages, attorneys' fees and costs incurred in this action and prejudgment interest.

3

## VI.    PRAYER FOR RELIEF

4

5    **WHEREFORE**, Plaintiff Facebook prays for the following relief:

6    A.    For injunctive relief, as follows:  A preliminary and permanent injunction enjoining

7  and restraining Defendants from:

8        1. accessing or attempting to access Facebook's website, services and computer
9           systems;

10       2. engaging in any unlawful, misleading or malicious activities directed at or relating
            to the Facebook network or Facebook users;

11

12       3. accepting affiliate referrals or Internet traffic of any kind from Facebook;

13       4. initiating unsolicited commercial electronic mail messages to Facebook users;

14       5. procuring unsolicited commercial electronic mail messages to Facebook users;

15       6. engaging in any activity that disrupts, diminishes the quality of, interferes with the
            performance of or impairs the functionality of Facebook's website or services;

16

17       7. using, displaying, trafficking in or any other activity that infringes or dilutes the
            Facebook Trademarks; and

18
         8. engaging in any activity that violates Facebook's Statement, Advertising
19           Guidelines or Pages Terms.

20   B.    The greater of its actual monetary loss or statutory damages as provided by 15 U.S.C.

21  § 7706(g)(1)(B), in an amount to be proven at trial.

22   C.    An award of aggravated damages in an amount equal to three times the amount

23  otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) for willful and knowing violation of

24  CAN-SPAM.

25   D.    An order requiring Defendants to account for, hold in constructive trust, pay over to

26  Facebook and otherwise disgorge all profits derived by Defendants from their unlawful conduct

27  and unjust enrichment, as permitted by law;

28

1      E.     An award to Facebook of damages, including but not limited to, compensatory,

2  statutory, treble, aggravated, and punitive damages, as permitted by law and in such amounts to

3  be proven at trial;

4      F.     An award to Facebook of reasonable costs, including reasonable attorneys' fees,

5  including but not limited to those afforded by 15 U.S.C. § 7706(g)(4);

6      G.    For pre- and post-judgment interest as allowed by law; and

7      H.    For such other relief as this Court may deem just and proper.

8

9

10  DATED: January 26, 2012

**PERKINS COIE** LLP

11                               By:

12                                Brian P. Hennessy, Bar No. 226721
                                    BHennessy@perkinscoie.com

13

14                                Attorneys for Plaintiff
                                FACEBOOK, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY DEMAND**

2

3       Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury as to

4   all issues so triable in this action.

5   DATED:  January 26, 2012                **PERKINS COIE** LLP

6

7                                           By:_____
                                                Brian P. Hennessy, Bar No. 226721
8                                               BHennessy@perkinscoie.com

9                                           Attorneys for Plaintiff
                                            FACEBOOK, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
Case No. _____